UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Venantius Nkafor Ngwanyia,
et al.,

                      Plaintiffs,

                                      Civ. No. 02-502 (RHK/AJB)
                                      **MEMORANDUM OPINION**
                                      **AND ORDER**

v.

Alberto Gonzales,
U.S. Attorney General, et al.,

                      Defendants.

Nadine K. Wettstein and Mary A. Kenney, American Immigration Law Foundation, Washington, D.C.; Iris Gomez, Massachusetts Law Reform Institute, Boston, Massachusetts; and James K. Langdon II, Dorsey & Whitney, Minneapolis, Minnesota, for Plaintiffs.

Nancy E. Friedman, U.S. Department of Justice Office of Immigration Litigation, Washington, D.C., and Friedrich A. P. Siekert, Assistant United States Attorney, Minneapolis, Minnesota, for Defendants.

**Introduction**

      Counsel for the plaintiff class and the defendant federal government officials and agencies seek final approval of their proposed Settlement Agreement, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure. The Court preliminarily approved the parties' proposed Settlement Agreement and directed notice to be distributed to the class members. After notice was distributed, class members filed a number of objections. The

Court conducted a fairness hearing on June 15, 2005. For the reasons set forth below, the Court finds the Settlement Agreement fair, reasonable, and adequate, and will grant it final approval.

**Background**

A.  **The Allegations**[1]

In March 2002, forty-six asylees[2] with pending applications for lawful permanent resident status in the United States, on behalf of a class of individuals (collectively, "Plaintiffs"), sued the United States Attorney General, Secretary of the Department of Homeland Security, the Department of Homeland Security, Director of the Bureau of Citizenship and Immigration Services, and the Bureau of Citizenship and Immigration Services (collectively, "Defendants").[3] Plaintiffs asserted that Defendants improperly administered the system by which asylees become lawful, permanent residents of the United States. (See Doc. No. 91 (Order dated 2/12/04).)

---

[1] For further detail on the statutory and regulatory framework at issue in this case, as well as details on the proceedings in this matter, see 302 F. Supp. 2d 1076 (D. Minn. 2004).

[2] "Asylees" refers to individuals granted asylum in the United States.

[3] Plaintiffs originally sued the Immigration and Naturalization Service ("INS") and its commissioner. Effective March 1, 2003, the INS was abolished and its immigration benefits and services functions were transferred to the newly created Bureau of Citizenship and Immigration Services division within the Department of Homeland Security. Thus, under Fed. R. Civ. P. 25(d), the Court substituted Defendants Secretary of the Department of Homeland Security, Department of Homeland Security, Director of the Bureau of Citizenship and Immigration Services, and Bureau of Citizenship and Immigration Services, for the now abolished INS and its commissioner. (See Doc. No. 91 (Order dated 2/12/04).)

Plaintiffs alleged Defendants violated: (1) 8 U.S.C. § 1159(b) by violating Plaintiffs' right to adjust their status and by delaying their adjustment pursuant to that statute; (2) 8 C.F.R. § 209(a)(1) by not maintaining a priority waiting list based on the date each Plaintiff's adjustment application was filed; (3) Pub. L. No. 105-277, Title I, § 128, Pub. L. No. 106-429, § 586, and Pub. L. No. 106-378 by failing to exempt qualifying Iraqi Kurds, Indo-Chinese parolees, and Syrian Jews from the 10,000 lawful permanent resident cap; (4) 8 U.S.C. § 1158(c)(1)(B) by requiring Plaintiffs to apply for and renew Employment Authorization Documents in order to be employed when the right to employment is incident to their status as asylees; (5) the Administrative Procedures Act by unlawfully withholding or unreasonably delaying agency action under 5 U.S.C. § 706(1); and (6) the Due Process and Equal Protection Clauses of the Fifth Amendment to the United States Constitution.  Plaintiffs sought injunctive relief requiring Defendants to comply with the statutory, regulatory, and constitutional requirements outlined above, as well as attorneys' fees under the Equal Access to Justice Act.  (See Doc. No. 37 (Order dated 1/14/03).)

**B.     Class Certification Granted**

In January 2003, the Court certified the matter as a class action on behalf of tens of thousands of asylees pursuant to Rule 23 of the Federal Rules of Civil Procedure.  (See Doc. No. 37 (Order dated 1/14/03).)  The Court found that Plaintiffs' claims satisfied the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a).  The Court further found that Plaintiffs' claims satisfied Rule 23(b)(2), which permits class

certification if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

The Court certified the following class and sub-classes:

**Class:** All asylees in the United States who have applied for adjustment of status to lawful permanent residence and whose applications for adjustment remain pending;

**Subclass I:** All asylees who filed their adjustment of status applications with the INS on or before January 16, 1998;

**Subclass II:** All asylees who filed their adjustment of status applications after January 16, 1998, and on or before June 9, 1998;

**Subclass III:** All asylees who filed their adjustment of status applications after June 9, 1998;

**Subclass IV:** All asylees who applied for or applied to renew an Employment Authorization Document.

(See Doc. No. 37 (Order dated 1/14/03).)

### C. Plaintiffs' Motions for Summary Judgment Granted

In February 2004, the Court granted Plaintiffs' cross-motions for summary judgment and denied Defendants' cross-motion for summary judgment. (See Doc. No. 91 (Order dated 2/12/04).) The two main issues raised in the cross-motions concerned asylee adjustment and employment endorsement.

With regard to asylee adjustment, the Court:

- Declared, as a matter of law, that all refugee admission numbers that have been made available for asylee adjustments in prior years but remain unused are presently available to be used for asylee adjustment;

- Ordered that Defendants make an accounting of the precise number of asylee adjustment numbers made available by the President but not used by Defendants in each fiscal year since 1992;

- Ordered that Defendants make an accounting of the precise number of asylee adjustment numbers made available by the President that were erroneously used to adjust the status of asylees subject to statutory exemptions, including certain Iraqi Kurds, Syrian Jews, and asylees who applied for asylum prior to 1990; and

- Ordered that Defendants use all unused and misused asylee adjustment numbers made available in prior years to adjust the status of asylees, beginning at the start of the waiting list.

With regard to employment endorsement, the Court:

- Declared that Defendants have a statutory duty to provide, on their own initiative, endorsement of employment authorization to all asylees immediately upon grant of asylum; that Defendants have no discretion to deny such an endorsement; and that the endorsement must contain, at a minimum, the fingerprint and photograph of the asylee and be continuously valid for the duration of the alien's status as an asylee; and

- Ordered that Defendants provide all asylees with an employment authorization endorsement that is valid throughout the duration of the alien's status as an asylee.

(See Doc. No. 91 (Order dated 2/12/04).)

The Court stayed its Order until the time for appealing had expired, and, if appealed, continued the stay throughout the pendency of the appeal. (See id.) Finding no just reason for delaying the entry of judgment, the Court directed the Clerk to enter judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure and judgment was entered. (See Doc. Nos. 91, 92.)

**D.     Other Claims Dismissed**

In March 2004, based on the representations of Plaintiffs' counsel, the Court dismissed with prejudice any and all claims not addressed in the February 12, 2004 Memorandum Opinion and Order.  (See Doc. No. 95.)

### E.   The Appeal, Execution of Settlement Agreement, and Limited Remand

In April 2004, Defendants filed a Notice of Appeal to the Eighth Circuit Court of Appeals as to the February 12, 2004 Memorandum Opinion and Order.  (See Doc. No. 99.)  In January 2005, the parties executed the proposed Settlement Agreement.  In February 2005, the Eighth Circuit granted the Parties' Joint Motion For Limited Remand and To Hold Appeal in Abeyance.  (See Doc. No. 105.)  The Eighth Circuit remanded the case to this Court "for the purpose of holding a fairness hearing to determine whether to approve the stipulated settlement agreement."  (Id.)

### F.   The Terms of the Proposed Settlement Agreement

In May 2005, this Court granted preliminary approval of the proposed Settlement Agreement, and approved the proposed notice for distribution.  (See Doc. No. 109.)  The proposed Settlement Agreement "is fully dispositive" of all Plaintiffs' claims and is fully binding upon the parties, and on each of their successors and successor agencies.

The Settlement Agreement sets forth the parties' agreement on the two main issues of asylee adjustment and employment endorsement.  With regard to asylee adjustment, Section E, which is entitled "Processing of Applications For Adjustment of Status," provides for: the use of unused or misplaced asylee adjustment numbers; the distribution of unused asylee adjustment numbers (paragraph 22 specifies a minimum distribution of

61,000 over the next three fiscal years)[4]; quarterly and annual reports; an adjustment processing contact person; and the continued use of numbers made available in current and future fiscal years. With regard to employment endorsement, Section F, which is entitled "Endorsement and Duration of Authorization To Work," details how Defendants will provide asylees with employment authorization documents.

In addition, Section H provides that the Settlement Agreement remains in effect for three years or until Defendants complete the following, whichever is <u>longer</u>: (1) completion of the processing of 31,000 adjustment applications as described; and (2) implementation of procedures to issue employment adjustment documents. No later than thirty days prior to the three-year anniversary of the effective date of the Settlement Agreement, Defendants will report to Plaintiffs and to this Court that Defendants have or have not met its obligations. If the obligations are not met, Defendants will appear before the Court to discuss compliance and appropriate action.

Furthermore, Section C provides that upon approval of the Settlement Agreement by the Court, the parties agree to move this Court to dismiss the case with prejudice and to vacate its February 12, 2004 Memorandum Opinion and Order. Upon the Court issuing orders approving the proposed Settlement Agreement, dismissing the case with prejudice, and vacating the February 12, 2004 Memorandum Opinion and Order, Defendants will withdraw its appeal to the Eighth Circuit within thirty days.

---

[4] (<u>See</u> Doc. No. 110 (Parties' Joint Notice of REAL ID ACT).)

Also under Section C, the Court retains jurisdiction over the following matters: (a) claims by any party that any other party has committed a significant violation of the Settlement Agreement; (b) the express repudiation of any of the terms of the Settlement Agreement by any party; and (c) any applications for attorneys' fees and costs under the Equal Access to Justice Act related to enforcement of the Settlement Agreement, including monitoring that results in an enforcement action, filed by or on behalf of a class member. The parties agreed not to seek to invoke the Court's jurisdiction, except as to attorneys' fees, unless and until the party has complied with the dispute resolution provisions outlined in Section D.[5]

---

[5] In Plaintiffs' Motion for Preliminary Approval of Settlement Agreement, Approval of Notice to the Class and Statement Identifying Agreement, Plaintiffs' counsel informed the Court that the parties have reached a separate attorneys' fees and costs agreement. The fee agreement provides that Defendants will pay to Plaintiffs' counsel a specified sum of fees and costs (an amount not disclosed to the Court). Counsel also informed the Court that, as was explained in the notice to the class, the individual plaintiffs and class members have not paid attorneys' fees or costs, will not be asked to pay attorneys' fees or costs, and will not have to pay attorneys' fees or costs in connection with this case. (See Doc. No. 106.)

**G.     The REAL ID Act**

On May 11, 2005, Congress enacted the REAL ID Act of 2005, Pub. L. No. 109-13.  The Act includes Section 101(g) which lifted a 10,000 cap on asylee adjustments per fiscal year.  See REAL ID Act, Pub. L. 109-13, Division B, Title I (2005).  The parties subsequently filed Parties' Joint Notice of REAL ID ACT stating that should the Settlement Agreement be approved by the Court, the parties will abide by its terms, including paragraph 22, which provides for the processing and adjusting of a minimum of 61,000 asylees within the next three fiscal years.  (See Doc. No. 110.)

**H.     Responses to the Proposed Settlement Agreement**

In response to the notice of the Settlement Agreement, fourteen individuals filed objections with the Court.  It is not apparent, however, that every objector is a class member.  Assuming that all fourteen are class members, and further assuming that the class size is ten thousand individuals,[6] the Court received objections from less than one percent (1%) of the class.

The greatest number of objectors addressed the effect of the REAL ID Act.  Others asserted that asylee adjustment for legal permanent residence should be treated like refugee adjustments.  A few others suggested that Defendants backdate the approval date for a green card to the date the application was received.  One person objected to the lack of a definition for class membership in the Settlement Agreement.  Finally, various

---

[6] This is probably a gross underestimate.

objectors sought additional relief, such as reducing the wait for citizenship after legal permanent resident status; creating an expedited process like that apparently used for H-1B visas; considerations of expedited reunion with family; and priority adjustment for those who applied for asylum prior to 1998.

## I.      Fairness Hearing and Joint Motion

On June 15, 2005, the Court held a fairness hearing on the proposed Settlement Agreement. Counsel for all parties appeared and four class members raised objections during the hearing. After listening to the parties' arguments and to the objectors' concerns, the Court gave final approval to the Settlement Agreement on the record, and counsel were directed to submit a proposed order. On June 24, 2005, counsel submitted a proposed order and filed a Joint Motion For Court Approval of Settlement Agreement and to Dismiss. (Doc. No. 129.)

## Analysis

Under Rule 23(e) of the Federal Rules of Civil Procedure, the Court must approve any settlement of the claims, issues, and defenses of a certified class. Fed. R. Civ. P. 23(e)(1)(A). The Court may approve a settlement that binds class members "only after a hearing and on finding that the settlement . . . is fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(1)(C); see Van Horn v. Trickey, 840 F.2d 604, 606 (8th Cir. 1988). To determine whether a settlement satisfies these standards, the Court must consider: "[1] the merits of the plaintiff's case, weighed against the terms of the settlement; [2] the defendant's financial condition; [3] the complexity and expense of further litigation; and

[4] the amount of opposition to the settlement." Van Horn, 840 F.2d at 607 (citations omitted). While "the district court need not undertake the type of detailed investigation that trying the case would involve," the Court "must nevertheless provide the appellate court with a basis for determining that its decision rests on well-reasoned conclusions and not mere boilerplate." Id. (citations and internal quotations omitted). The Court will consider each of the above-mentioned factors in turn.

    **A.    Merits of Plaintiffs' Case, Weighed Against Terms of the Settlement**

This factor is "[t]he single most important factor in determining whether a settlement is fair, reasonable, and adequate." Van Horn, 840 F.2d at 607. In this case, Plaintiffs' primary concerns were with asylee adjustments and employment endorsements. They prevailed on both claims at summary judgment. (See Doc. No. 91 (Order dated 2/12/04).) Obviously, in the Court's assessment, Plaintiffs' case was meritorious. Weighing the merits of the case against the settlement terms, the Court finds that a comparison of the relief sought by Plaintiffs and the relief proposed in the Settlement Agreement demonstrates that Plaintiffs were highly successful. Having carefully reviewed both the merits of the case and the terms of the Settlement Agreement, the Court finds that the settlement provides "substantial benefits to the class." Van Horn, 840 F.2d at 608 (citation omitted). Accordingly, the Court concludes that this factor weighs heavily in favor of approval of the Settlement Agreement.

    **B.    Defendants' Financial Condition**

This factor is not significant in this case because the action is not for monetary damages. See Cody v. Hillard, 88 F. Supp. 2d 1049, 1059 (D.S.D. 2000).

### C.  Complexity and Expense of Further Litigation

This case, which presents moderately complex issues of agency administration of immigration law, was initiated more than three years ago and has already consumed a considerable amount of time and resources of both parties and the Court. If the litigation continues, which initially will be in front of the United States Court of Appeals for the Eighth Circuit, more time and resources will be expended. The delay in resolving the issues raised in this case will only further delay the relief that the asylees seek and that Defendants have agreed to provide. Accordingly, the Court finds that this factor weighs in favor of approval of the Settlement Agreement.

### D.  Amount of Opposition to the Settlement

The amount of opposition to the settlement is relatively small. The Court received objections from fourteen people, each raising a number of concerns. Assuming that each objector is a class member, and assuming that the class size is ten thousand people, less than one percent (1%) of the class objected to the settlement. It is the opinion of class counsel that the objections presented do not warrant rejection of the proposed Settlement Agreement. (See Doc. Nos. 119, 124, 127.) The Court will address the objections in turn.

#### 1.  Effect of the REAL ID Act

The greatest number of objectors addressed the effect of the REAL ID Act. Prior to the REAL ID Act, the President could authorize the admission of fifty thousand refugees each fiscal year, and the Attorney General could, at his discretion, use up to ten thousand refugee admission numbers to adjust the status of asylees already in this country to the status of lawful permanent residents. (See Doc. No. 91 at 6 (Order dated 2/12/04).) Section 101(g) of the REAL ID Act lifted the ten thousand number cap on asylee adjustments. See REAL ID Act of 2005, Pub. L. 103-13, Division A, Title I (2005). The objectors apparently view the Settlement Agreement as placing a cap on asylee adjustments in violation of their rights.

The Court finds that the objectors' concerns regarding the effect of the REAL ID Act are unfounded. The Settlement Agreement does not implement a cap; rather, it requires Defendants to adjust the status of a minimum number of asylees within the next three years. After the passage of the REAL ID Act, counsel from both parties filed Parties' Joint Notice of Real ID Act wherein Defendants agreed to abide by the terms of the Settlement Agreement which "provides for the processing and adjusting of a minimum of 61,000 asylees within the next three fiscal years." (Doc. No. 110 (emphasis added).) Accordingly, the Court will overrule the objection.

### 2.    Treating Asylee Adjustment For Legal Permanent Residency Like Refugee Adjustment

A significant number of objectors asserted that adjusting the status of asylees to legal permanent resident status should be treated like refugee adjustments. This objection

is unfounded because Congress has set the manner in which asylee and refugee adjustment applications are handled by statute. This lawsuit did not challenge the validity of those laws; rather, it challenged the ways in which the laws were being carried out. Accordingly, the Court will overrule this objection.

### 3. Backdating Green Cards

Some objectors suggested that Defendants backdate the approval date for a green card to the date the application was received. This objection is unfounded because Congress has set the manner in which applications are backdated by statute. See 8 U.S.C. § 1159(b) (providing one-year backdating of alien's admission for lawful permanent residence). As noted above, this lawsuit concerned not the validity of the laws passed by Congress, but rather the ways in which the administrative agencies were carrying out the laws. Accordingly, the Court will overrule this objection.

### 4. Definition of Class Membership

One person objected to the lack of a definition for class membership in the Settlement Agreement. This objection will be overruled because Section A, subsection 8, of the Settlement Agreement provides the class and sub-class definitions as ordered by this Court.

### 5. Miscellaneous Objections

Finally, some objectors asked for various other types of relief, such as reducing the wait for citizenship after legal permanent resident status; creating an expedited process like that apparently used for H-1B visas; considerations of expedited reunion with family;

and priority adjustment for those who applied for asylum prior to 1998.  Again, Congress has set forth the manner in which these matters are handled and this lawsuit did not challenge those statutes as invalid; rather, it challenged how the statutes were administered.  Accordingly, these objections will be overruled.

    **E.**    **Conclusion**

Having considered the relevant factors, the Court concludes that the Settlement Agreement is fair, reasonable, and adequate, and will grant it final approval.

## Conclusion

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED**:

1. The proposed Settlement Agreement dated January 31, 2005 is **APPROVED** as fair, reasonable, and adequate pursuant to Fed. R. Civ. P. 23(e).  The parties are ordered to carry out the terms of the Settlement Agreement;

2. The objections to the Settlement Agreement are **OVERRULED**;

3. The Joint Motion For Court Approval of Settlement and to Dismiss (Doc. No. 129) is **GRANTED**;

4. This case is **DISMISSED WITH PREJUDICE**, pursuant to paragraph 15(a) of the Settlement Agreement (except as to those matters that will remain the subject of the Court's retained jurisdiction under paragraphs 16

and 17 of the Settlement Agreement, but only for the life of the Settlement Agreement pursuant to Section H of the Settlement Agreement); and

5. The Court's Memorandum Opinion and Order of February 12, 2004 is **VACATED**. The Court notes, however, that the Memorandum Opinion and Order is vacated only because vacation was made a condition of the settlement, and because the Court finds that the settlement is fair, reasonable, and adequate and should be approved and put into effect. The Court reaffirms its views expressed in that Memorandum Opinion and Order, which is published at 302 F. Supp. 2d 1076 (D. Minn. 2004).

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: July 12, 2005

s/Richard H. Kyle
RICHARD H. KYLE
United States District Judge